IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CONNIE S. BRYANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 7:16-cv-107 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**REPORT AND RECOMMENDATION**

In this social security appeal, I **RECOMMEND DENYING** the Commissioner's Motion for Summary Judgment, **GRANTING** Plaintiff's motion for summary judgment and **REVERSING** and **REMANDING** this matter for further administrative consideration consistent with this opinion because the residual functioning capacity ("RFC") developed by the ALJ failed to properly account for Plaintiff's moderate limitation in concentration, persistence, and pace.

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Plaintiff Connie S. Bryant ("Bryant") failed to demonstrate that she was disabled under the Social Security Act ("Act").[2] "Substantial evidence is such

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability

1

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion leaves the court to guess at how he reached his conclusions regarding Bryant's RFC.

## **CLAIM HISTORY**

Bryant protectively filed for disability insurance benefits ("DIB") on June 11, 2012, claiming that her disability began on September 1, 2008, due to diabetes, depression, mood disorder, hernia, possible heart problems, fluctuating blood pressure, and high liver enzymes. R. 178. The state agency denied Bryant's DIB application at the initial and reconsideration levels

---

under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2).

of administrative review. R. 74–78, 84–90. Bryant's date last insured was December 31, 2013. On September 3, 2014, ALJ Thomas Erwin held a hearing to consider Bryant's claims for DIB. R. 20–53. Counsel represented Bryant at the hearing, which included testimony from vocational expert Mark Hileman.

On November 13, 2014, the ALJ entered his decision analyzing Bryant's claim under the familiar five-step process[3] and denying her claim for benefits. R. 11–18. The ALJ found that Bryant suffered from several severe impairments: diabetes mellitus associated with reduced vision, obesity, hernia, and bipolar disorder/depression. R. 13. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 14. The ALJ further found that Bryant retained the RFC to perform light work, except that she is limited to simple, routine, repetitive, unskilled tasks requiring no interaction with the public and no more than occasional interaction with coworkers and supervisors. R. 14–15.

The ALJ determined that Bryant could not return to her past work of collection clerk and loan clerk (R. 16), but that she could perform other work that exists in significant numbers in the national economy, such as routing clerk, marker/merchandise maker, and gluer. R. 17. Thus the ALJ concluded that Bryant was not disabled. Id. On January 29, 2016 the Appeals Council denied Bryant's request for review (R. 1–4), and this appeal followed.

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## ANALYSIS

Bryant asserts that the ALJ failed to adequately explain how limiting her to simple, routine, repetitive, unskilled work accounts for her moderate limitations in concentration, persistence, and pace. The medical record shows that Bryant suffers from depression, mood disorder, anxiety, panic attacks, and moderate bipolar disorder. R. 303, 311, 339, 363. Tamara Baldwin, FPMHNP-BC, first treated Bryant for her mental health issues in June 2012, and has prescribed Bryant medication for depression, bipolar disorder, panic disorder, and anxiety. R. 303–08, 330–35, 344–52, 364–69, 373–74. Specifically, on July 9, 2012, Baldwin noted that Bryant suffered from depression, anxiety, high stress level, sleep disturbance, mood swings and mania. R. 264. In August 2012, Bryant reported increased mood swings and agitation (R. 338) and in October 2012, Baldwin noted that Bryant's depression was worsening and she had racing thoughts, pressured speech, mania, impulsive behavior and anxiety. R. 335.

Bryant followed up with Baldwin in November 2012, January 2013, April 2013, June 2013, August 2013, December 2013, February 2014 and May 2014. R. 331, 332, 344, 348, 350, 365, 367, 373. Throughout, Bryant exhibited depression, anxiety, high stress levels, sleep disturbance and mood swings. Id. In April 2013, Bryant reported panic attacks several times per week, and in June 2013, Baldwin noted that Bryant had scattered attention, impaired concentration, and impaired ability to concentrate to perform tasks. R. 349. In December 2013, Baldwin found that Bryant's anxiety and bipolar disorder were worsening, and she was having frequent crying spells. R. 373. Bryant also suffered from sleep disturbances, difficulty falling asleep and difficulty staying asleep. Id. Bryant testified at the administrative hearing that her anxiety and mood disorder affects her ability to concentrate. R. 44–46.

At step three, the ALJ considered Bryant's mental health history and found that her mental impairments did not meet or equal the criteria of an affective disorder as set out in Listing 12.04. R. 14. The ALJ noted that Baldwin was treated for depressed mood, panic attacks, anxiety and mood swings, and that she was prescribed psychotropic medications, which include Zoloft, Xanax and Lamictal. Id.  The ALJ noted that the state agency psychologists at the initial and reconsideration level reviewed Bryant's records and determined that she did not have a severe mental impairment. R. 54–62, 63–72. The ALJ gave little weight to these findings because the state agency review occurred without consideration of subsequent medical evidence regarding Bryant's mental health. R. 14. The ALJ recited Bryant's testimony that her medications make her sleepy and shaky, she has crying spells, she does not have the patience to work with the public, she needs frequent breaks between her activities and she has panic attacks twice a month. Id. Based upon the record, the ALJ determined that Bryant suffered from a mild limitation with activities of daily living, and moderate limitations in social functioning, and concentration, persistence, and pace. R. 14.

At step four, the ALJ summarized Bryant's mental health treatment, stating,

> [t]he claimant has a history of mental health evaluation and treatment of symptoms that have included depressed mood, panic attacks, anxiety and mood swings.  Her treatment records and evaluation reports reflect several diagnoses, including mood disorder, not otherwise specified, and bipolar disorder, and mild depression.  In February 2014, she reported that she was helped by Xanax.  Her bipolar disorder has been described as moderate.

R. 16. (Internal citations omitted).  The ALJ also stated, "[c]onsidering the objective evidence concerning [Bryant's] mental symptoms, her mental impairments reasonably result in the mental limitations stated above." Id.  Without further analysis, the ALJ then concluded, "[n]evertheless, the medical evidence simply does not establish… that her mental health conditions would

5

preclude all work." Id. The ALJ developed an RFC finding that Bryant is capable of performing light work activity, limiting her to "simple, routine, repetitive, unskilled tasks." R. 14.

These findings formed the basis of the hypothetical question posed by the ALJ to the vocational expert at Bryant's hearing. The ALJ asked the vocational expert whether jobs existed for a claimant limited to light work, no interaction with the public, and no more than occasional interaction with coworkers and supervisors. Id. The hypothetical included a limitation of simple, routine, repetitive, and unskilled work, but did not include Bryant's history of depression and mood disorders, or her moderate limitation in concentration, persistence, and pace. Id. The vocational expert listed occupations that Bryant could perform, leading the ALJ to find Bryant not disabled.

In Mascio v. Colvin, the Fourth Circuit held that an "ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d 632, 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The court differentiated between the ability to perform tasks and the ability to stay on task, noting that only the latter would "account for a claimant's limitation in concentration, persistence, or pace." Id. The ALJ in Mascio did not explain why the claimant's limitation in concentration, persistence, and pace did not result in a subsequent limitation in the claimant's RFC. The Fourth Circuit held that without such explanation, remand was necessary. Id.

In Perdue v. Colvin, this Court emphasized the ALJ's duty to explain how limiting a claimant to simple and unskilled work adequately accounted for that claimant's limitation in concentration, persistence, and pace:

> Based on the medical record developed in a particular claimant's case, it is
> certainly possible that the claimant may be capable of performing simple, routine,

6

> or unskilled work despite moderate impairments in concentration, persistence, and pace. The simple fact is that no two claimants are the same, and a particular claimant's capacity for alternate work activity may turn, in part, on factors such as physical condition, age, education, and prior work experience. However, when the Law Judge believes that a particular claimant's impairments in concentration, persistence and pace do not affect the claimant's capacity for simple, routine, or unskilled work, it seems only reasonable that the Law Judge should explain this finding, in relation to the medical record.

Perdue v. Colvin, No. 7:14cv00173, 2015 WL 5771813, at *6 (W.D. Va. Sept. 30, 2015).

Here, the Commissioner contends that "[b]y restricting Plaintiff to simple, routine, repetitive, unskilled tasks, the ALJ adequately accounted for Plaintiff's moderate limitation in maintaining concentration, persistence, or pace." Def. Br. p. 6. Both Mascio and Perdue allow for the possibility that a restriction to simple, unskilled tasks *could* adequately account for a claimant's moderate limitation in maintaining concentration, persistence, or pace. See Mascio, 780 F.3d at 638; Perdue, 2015 WL 5771813, at *6. To do so, however, the ALJ must explain, citing evidence from the medical record, how limiting the claimant to simple, unskilled work adequately accounts for the claimant's mental impairments. Id.

Here, the ALJ did not explain why limiting Bryant to simple and unskilled work adequately accommodated her moderate limitation in concentration, persistence, and pace. The ALJ noted aspects of Bryant's mental health history, cited some of her medications, and referred to diagnoses contained in her treatment records. R. 16. The ALJ considered Bryant's mental health records, and concluded that her mental impairments reasonably result in a moderate limitation in concentration, persistence, and pace. R. 14. The ALJ summarily concluded that the medical evidence "simply does not establish . . . that her mental health conditions would preclude all work." R. 16. The ALJ limited Bryant to simple and unskilled work, yet did not explain whether Bryant can meet the mental demands of simple and unskilled work given her

7

mental impairments. The record lacks any opinion from a treating or reviewing source that Bryant could perform simple, unskilled work despite her mental impairments. Indeed, the ALJ engaged in no analysis of the medical evidence as to how he concluded that Bryant retained the ability to engage in simple, repetitive, and unskilled work despite her mental impairments. Without such explanation, the court "is left to guess about how the ALJ arrived at his conclusions" regarding Bryant's RFC. Mascio, 780 F.3d at 637.

The failure to adequately explain how Bryant's RFC accounted for her mental limitations in concentration, persistence, and pace rendered inadequate the hypothetical posed to the vocational expert. The Fourth Circuit explained in Monroe v. Colvin, 826 F.3d at 188, that a vocational expert's testimony must be based on all of the medical evidence in the record and be in response to proper hypothetical questions that account for all of the claimant's impairments. Here, the ALJ's hypothetical to the vocational expert limited Bryant to simple, repetitive, and unskilled work, and made no mention of Bryant's moderate limitations in concentration, persistence, and pace. R. 50. Accordingly, the hypotheticals presented did not allow the vocational expert to consider Bryant's mental impairments when forming his opinion about what occupations Bryant could perform.

Perhaps the ALJ can explain how limiting Bryant to simple, unskilled work adequately accounted for her moderate limitations in concentration, persistence, or pace. His failure to do so, however, is reversible error and requires remand. See Mascio, 780 F.3d at 637; Nichols v. Colvin, No. 7:15-cv-44, 2016 WL 4529780, at *3–*4 (W.D. Va. Aug. 3, 2016); White v. Colvin, No. 4:14-cv-18, 2015 WL 1958885, at *12 (W.D. Va. May 1, 2015). The ALJ's omission of "specific analysis" regarding Bryant's mental limitations precludes meaningful review. Monroe,

826 F.3d at 189. Thus, this matter should be remanded with instructions to the Commissioner to properly account for Bryant's moderate limitation in concentration, persistence, and pace.

## CONCLUSION

For the reasons set forth above, I recommend **GRANTING in part** Bryant's motion for summary judgment, **DENYING** the Commissioner's motion for summary judgment, and remanding this matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: July 11, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge